Lance E. Shurtleff, Wyo. Bar No. 6-3794
Gordon & Rees Scully Mansukhani, LLP
555 17th Street, Suite 3400
Denver, Colorado 80202
Tel: (303) 200-6849
E-Mail: lshurtleff@grsm.com

Stephenson D. Emery WSB #5-2321
David E. Shields WSB #7-4718
Williams, Porter, Day & Neville, P.C.
159 North Wolcott, Ste. 400
P.O. Box 10700
Casper, WY 82601
Tel:     (307) 265-0700
Fax:    (307) 266-2306
Email:  semery@wpdn.net
            dshields@wpdn.net

## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| PAVLO SHOSTAK and LYUDMYLA SHOSTAK, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) CIVIL NO. 19-CV-29-S ) |
| WALLER'S TRUCKING COMPANY, INC. a Wyoming Corporation, KILGORE COMPANIES, a Delaware Limited Liability Company dba LEWIS & LEWIS, INC. and JASON R. BUCK, Indiviually, | ) ) ) ) ) ) ) ) |
| Defendants. | |

### DEFENDANTS' JOINT RESPONSE TO PLAINTIFFS' OMNIBUS MOTION IN LIMINE

Defendant Kilgore Companies dba Lewis & Lewis, Inc., by and through its undersigned counsel, and Defendants Waller Trucking Company Inc. and Jason R. Buck, by and through their undersigned counsel, submit the following joint response to Plaintiffs' Omnibus Motion in Limine:

**I.      The Court should prohibit reference to traffic citations issued or not issued.**

Kilgore also filed a motion in limine asking the Court to limit certain evidence related to the investigation of the accident at issue in this case. Defendants agree the citation issued is inadmissible. Defendants also agree the opinion of Trooper Neilson "as to the ultimate issue to be decided by this jury" is inadmissible. *Harmon v. Town of Afton*, 745 P.2d 889, 893 (Wyo. 1987) (citing *Meyer v. Kendig*, 641 P.2d 1235, 1243 (1982).

However, admissible portions of the report may be used to present to the jury facts upon which Trooper Neilson bases his opinion. *Id.* Trooper Neilson is able to testify about his personal observations of the parties involved in the accident, the vehicles involved in the accident and various other observations the accident itself. *Id.*

## II. The Court should prohibit reference to collateral-source payments.

Given *Prager v. Campbell Cnty. Mem' Hosp.*, 731 F3.d 1046 (10th Cir. 2013) and the related case law concerning payments made by sources unrelated to the tortfeasor and write-offs negotiated between insurers and providers, Defendants do not intend to introduce evidence regarding past amounts paid by an insurer, write-offs offered to an insurer, and gratuitous services.

Defendants do, however, argue that the collateral source rule should not prevent Defendants from presenting evidence about the future availability of Medicare, Medicaid, or other insurance coverage to contest Plaintiff's alleged future medical expenses.

Under the collateral source rule, "if an injured person receives compensation for his injuries from a source *wholly independent* of the tort-feasor, the payment should not be deducted from the damages which he would otherwise collect from the tort-feasor." *Miller v. Campbell Cty.*, 901 P.2d 1107, 1112 (Wyo. 1995) (citing *Kirtland & Packard v. Superior Court.*, 59 Cal.App.3d 140, 131 Cal. Rptr. 418, 421 (1976)) (emphasis added). Insurance maintained under Medicare,

Medicaid, or the ACA is not wholly independent of a tortfeasor if the tortfeasor is a taxpayer. Lamar F. Jost & Marissa S. Ronk, *The Affordable Care Act and Colorado's Collateral Source Rule*, 93 Denver U. L. Rev. 1, 6—7 (2016).

Even if the ACA is wholly independent of a tortfeasor, ACA evidence, or other similar evidence, is relevant to plaintiffs' *prima facie* obligations, witness credibility, and defendants' affirmative mitigation defenses. *Id* at 7.

In this case, Plaintiff Myla Shostak has claimed damages for the reasonable expense of necessary medical care, treatment, and services received to date and any medical expenses reasonably probable to be incurred in the future. There is no formula the court can give the jury for the determination of future damages; instead, any award must be determined by taking into consideration the evidence presented and from the jurors' knowledge, observation, and experience in life. *See, e.g.,* W.C.P.J.I. 4.01. Because of the evidence used in making a determination with respect to future damages, Defendants should be allowed to present ACA evidence.

Similarly, ACA evidence is relevant to the extent that it will assist the trier of fact in assessing the credibility of expert witnesses. Any expert witness involved in formulating a care plan or calculating the cost of a plan must establish that such costs will be necessarily incurred, which will be difficult to do if Defendants are not allowed to cross-examine these witnesses on the issue of ACA or other similar evidence, and whether these witness considered this information in formulating a life care plan.

Lastly, ACA evidence should be admissible to prove that a plaintiff failed to mitigate her damages. *See* Lamar F. Jost & Marissa S. Ronk, *The Affordable Care Act and Colorado's Collateral Source Rule*, 93 Denver U. L. Rev. 1, 8 (2016). A person has the duty to take reasonable

steps under the circumstances to reduce his injuries and damages, and any damages resulting from a failure to take such reasonable steps cannot be recovered. *See* W.C.P.J.I. 4.08. To that end, Defendants should be permitted to introduce evidence regarding the availability of any insurance to the extent it is a reasonable expenditure to avoid incurring future medical expenses.

> **III.** **The Court should exclude Trooper Neilson's opinions about whether Jason Buck's actions were "reckless" and whether Mr. Buck acted with "malicious intent."**

Defendants do not object to the exclusion of testimony which addresses a question of law and agree any statements by a witness which "state[s] legal conclusions by applying law to facts" is impermissible. *United States v. Jenson*, 608 F.2d 1349, 1356 (10th Cir. 1979). This applies to lay and expert witness testimony. *See, Valencia v. Bos. Sci. Corp.*, No. 2:13-cv-12330, at *2 (S.D. W. Va. May 23, 2016). This rule should be applied to not only Trooper Neilson's opinions but also experts retained by Plaintiffs to provide opinions about the accident and about the liability of the parties. Plaintiffs are concerned about Trooper Neilson providing testimony about the ultimate issue of fact; Plaintiffs should be equally concerned about Michael McCort's expert testimony as set forth in Defendants' second motion in limine. (Doc. 61, at pp. 4-6). Testimony from any witness telling the jury the actions of any defendant is "reckless" or "malicious" should be excluded.

> **IV.** **The Court should prohibit unlisted witnesses from testifying at trial.**

Defendant Kilgore submitted its Initial Rule 26(a)(1) Disclosures, disclosing, generally, Plaintiffs' medical providers as witnesses. The purpose of the November 15, 2019 deadline is to prevent the calling of witnesses which may be unknown the parties. There is no obligation of Defendants to relist medical providers known to all parties or specifically list medical providers

already known to all parties. The witnesses listed in Defendants' witness list have been known to the parties through disclosure and had their depositions taken during the discovery phase, many after the November 15, 2019 deadline referenced by Plaintiffs. Defendants do not intend to call any unknown witness to trial; in fact, each of the witnesses listed by Defendants have been deposed in this matter. For these reasons, Plaintiffs request should be denied.

> **V. This Court should prohibit any treating healthcare providers from testifying as expert witnesses at trial.**

With respect to Plaintiffs' healthcare providers, Defendants intend to call Plaintiffs' medical providers to testify regarding the treatment provided the patient and provide opinion testimony based on the particular provider's treatment. Aside from the witnesses designated as experts, the medical providers in this case treated Plaintiffs on a very limited basis. Rather, the medical providers will be asked to provide testimony regarding their treatment of the Plaintiffs, opinions arrived at while treating Plaintiffs, and findings contained in the records and their reports which is related to their opinions and treatment. Such testimony is allowed, and any attempt to limit the medical providers from offering testimony of this type should be denied. *See,* Plaintiff's Omnibus Motion in Limine, at p.6 (citing *Kelly v. Union Pacific R.R.*, No. 08-CV-088-J, Order Granting in Part and Denying in Part Defendant's Motion to Limit Scope of Testimony of Treating Medical providers, 2008 WL 11335008, at *4 (D. Wyo. Nov. 10, 2008)).

> **VI. This Court should exclude evidence of recording errors Pavlo Shostak made in his Driver's Daily Log on the day of the crash.**

The errors in Mr. Shostak's Driver's Logbook are relevant to his credibility. Under federal law, he is required to keep an accurate and complete log of his driving activities. To the extent that the Logbook fails to accurately document what happened on the day of the accident, the jury could

5

surmise that Mr. Shostak is less than truthful. Furthermore, the Logbook entries are relevant to Plaintiffs' claim for personal injury damages. The fact that Mr. Shostak omitted any reference to the accident and to their alleged injuries in the accident suggests that there were no such injuries or that they were too minimal to even report.

### VII. Any exhibit that references Plaintiff's alleged non-use of a safety restraint should be appropriately redacted.

This request is premature. While the Court granted Plaintiffs' Motion In Limine to Preclude Evidence of Safety Belt use (Doc. 46), the Court noted "without testimony from Ms. Shostak that she used the sleeper restraint system, evidence of her nonuse is inadmissible for impeachment purposes. Ms. Shostak and Mr. Shostak testified during their depositions that the sleeper restraint system was being used. (See, Doc. 41; See, also, e.g., Deposition of Pavlo Shostak, at p. 103: 7-17, attached as **Exhibit A**). However, as Plaintiffs note, documents and records state Ms. Shostak was unrestrained. If Ms. Shostak or Mr. Shostak should testify, at trial, that Ms. Shostak was buckled in or restrained, argument will need to be made regarding whether the numerous instances in the medical records indicating that she was an unrestrained driver can be used impeachment purposes. Until Mr. and Ms. Shostak have given this testimony, such a request for a complete redaction of all instances indicating she not using the sleeper restraint system is premature.

WHEREFORE, Defendants respectfully request Plaintiffs' Omnibus Motion in Limine be denied for the reasons set forth above.

Respectfully submitted this 14th day of February, 2020

/s/ Lance E. Shurtleff

Lance E. Shurtleff
Gordon Rees Scully Mansukhani, LLP
555 17th Street, Suite 3400
Denver, Colorado 80202
Tel: (303) 200-6849
lshurtleff@grsm.com


/s/ Stephenson D. Emery
Stephenson D. Emery WSB #5-2321
David E. Shields WSB #7-4718
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 North Wolcott, Ste. 400
P.O. Box 10700
Casper, WY 82601

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 14, 2020, a true copy of the above and foregoing was electronically filed on the following counsel of record:

R. Daniel Fleck
Gabriel Phillips
The Spence Law Firm, LLC
15 S. Jackson Street, P.O. Box 548
Jackson, Wyoming 83001
fleck@spencelawyers.com
phillips@spencelawyers.com


/s/ Margot E. Glendenning

Margot E. Glendenning